**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 23-32-DLB-EBA**

**SKLO ACQUISITIONS, LLC** **PLAINTIFF**

**v.** **MEMORANDUM OPINION AND ORDER**

**CITY OF COVINGTON, et al.** **DEFENDANTS**

* * * * * * * * * * * * * * * *

## I. INTRODUCTION

This matter is before the Court on the Motion for Summary Judgment from Defendants City of Covington, David Davidson and Dalton Belcher (Doc. # 56) and the Motion for Summary Judgment from Plaintiff SKLO Acquisitions, LLC (Doc. # 62). Both Motions having been fully briefed, the matter is ripe for the Court's review. For the following reasons, Defendants' Motion for Summary Judgment (Doc. # 56) is **granted in part** and **denied in part**, and Plaintiff's Motion for Summary Judgment (Doc. # 62) is **denied**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a zoning dispute and the administrative and judicial proceedings that stemmed from it. Plaintiff SKLO Acquisitions, LLC ("SKLO") is an Ohio limited liability company that owns property in the City of Covington, Kentucky ("the City"), a Kentucky municipality and a Defendant in this case. (Doc. # 1-1 ¶ 1). Defendant David Davidson is the former City Solicitor for the City and Defendant Dalton Belcher is the Zoning Administrator for the City. (Doc. # 56 at 3).

On August 26, 2022, SKLO entered an agreement to lease its property located at 1116 Russell Street in Covington, Kentucky ("the Property") to Allie's Walkabout ("Allie's") for the purpose of operating a dog kennel. (Doc. # 62 at 5). The lease would begin once SKLO received all its necessary governmental permits. (*Id.*). The Property is located in an area zoned as a Traditional Urban Mixed Use ("TUMU") District under Covington's Zoning Code. (Doc. # 56-1 at 9). Notably, the operation of a "kennel"—defined by Article 158.09 of the Covington Neighborhood Development Code as "any premises on which four or more dogs, six months or older, are kept"—is not permitted in the TUMU District. (*See* Doc. # 56-1 at 2; Doc. # 56-2). Seemingly understanding this, SKLO requested that the Kenton County Planning Commission ("the Planning Commission") amend the Covington Zoning Ordinance to zone the Property in a Limited Industrial zone, such that the kennel would be in zone where it could operate. (Doc. # 56-3 at 5). After public input and debate, the Planning Commission voted against SKLO's proposed amendment. (*Id.* at 10). Nothing in the record indicates that SKLO appealed the Planning Commission's zoning decision. (Doc. # 61 at 27:1–24).

Undeterred, SKLO continued with its plans to rent the Property to Allie's. (*See* Doc. # 59-1 ¶¶ 14–15). Following a thorough review of the relevant zoning ordinances, SKLO hired a contractor to perform construction activities on the Property, which first required them to get a Certificate of Appropriateness ("COA" or "the permit") from the City. (Doc. # 56 at 2). SKLO's contractor applied for the COA on November 18, 2022. (Doc. # 56-4). The City, through Zoning Administrator Belcher, denied SKLO's COA on December 8, 2022, finding that the operation of a kennel is not permitted in the TUMU district. (Doc. # 56-5 at 5; Doc. # 58 at 42:14–16, 45:3–18). In response to the City's

denial of the COA, SKLO and Allie's entered into a First Amendment to their lease agreement, which extended SKLO's deadline to obtain the requisite zoning permits to September 30, 2023. (Doc. # 62 at 6; Doc. # 59-1 at 27–28).

On December 19, 2022, SKLO appealed Belcher's denial to the City's Board of Architectural Review and Development ("BOARD"), which is the City's board of adjustments for zoning decisions. (Doc. # 56-5). SKLO based its appeal on "the Zoning Administrator's failure to properly apply the [Neighborhood Development Code] to SKLO [sic] proposed use." (*Id*. at 5). Specifically, SKLO alleged that Allie's would be able to operate under the Service Oriented Uses provision of the Neighborhood Development Code § 02.04.3.E, which allows on a limited basis "non-medical services that are generally needed on a recurring basis . . . [such as] animal grooming and kennel services." (*Id*. at 6–7). SKLO further alleged that Belcher applied an inappropriate provision of the Code—one which deals with use of land for agricultural, horticultural and equestrian purposes—when analyzing what SKLO's property would be used for, such that the analysis and application of the code was improper. (*Id*. at 7). SKLO requested a hearing before the BOARD, which took place on January 18, 2023. (Doc. # 61 ¶ 18). After hearing testimony from several interested parties, the BOARD reversed Belcher and the City's decision and ordered the City to provide SKLO with the COA. (Doc. # 56-5; Doc. # 59 ¶ 18).

The controversial aspects of this case took place after the January 18, 2023 hearing. According to Lev Orlov, one of SKLO's owners, SKLO's contractor contacted Belcher to ask when they would receive the COA. (Doc. # 59 ¶ 19). Belcher was not responsive, so on January 30, 2023, SKLO's counsel emailed David Davidson,

Covington's then–City Solicitor, to inquire about the status of the COA. (*Id.* ¶ 20; *see also* Doc. # 59-1 at 30). Davidson responded the same day, stating that the City planned to appeal BOARD's decision by filing a civil action in Kenton County Circuit Court. (Doc. # 59-1 at 32). Davidson further stated the COA had not been issued and would not be issued "until the process is final." (*Id.*). Later that day, Davidson, acting in his role as City Solicitor, filed an action in Kenton Circuit Court, pursuant to Kentucky Revised Statute ("KRS") § 100.347(1)[1] against the BOARD, the BOARD's members in their official capacities, Belcher in his capacity as Zoning Administrator, and SKLO ("the State Court action"). (*See* Doc. # 56-7). The Complaint alleged that the City suffered injuries based on an "arbitrary and capricious . . . abuse of the Board of Architectural Review and Development's delegated powers" that was "a political decision driven by affection for animals and not by law or fact." (*Id.* at 12).

The next day, SKLO's counsel communicated to Davidson that SKLO would be filing a § 1983 action alleging a violation of its rights under the Fourteenth Amendment if the City did not issue the COA. (*Id.* at 38). When the City did not provide SKLO the promised COA, SKLO took two legal actions.

First, it moved to dismiss the City's Complaint in the State Court action. (Doc. # 56-8). In its Motion to Dismiss, SKLO argued that the City did not have standing to, in essence, sue itself for a decision it made. (*Id.* at 5–9). The Circuit Court issued its Order granting SKLO's Motion on April 7, 2023, finding that the City did not have sufficient

[1] KRS § 100.347(1) provides that "[a]ny person or entity claiming to be injured or aggrieved by any final action of the board of adjustment and that owns real property within the same zone where the property that is the subject of the final action is located shall appeal from the action to the Circuit Court of the county in which the property that is the subject of the action of the board of adjustment lies."

standing to bring the lawsuit because it was not an entity that had been injured or aggrieved within the meaning of the statute. (Doc. # 56-9 at 3). The City timely appealed the Circuit Court's Order to the Kentucky Court of Appeals, which issued its Opinion on May 10, 2024. (*See* Doc. # 56-10). The Court of Appeals affirmed the Circuit Court's ruling dismissing the Complaint, but it did so on narrower grounds. (*Id*. at 3). The court found that the City had not shown how it was injured or aggrieved by the BOARD's decision, which ultimately doomed its claim. (*Id*. at 5). The City further appealed the case to the Kentucky Supreme Court, but it declined further review. (Doc. # 60 at 175:13–21). With the State Court action having concluded, the City issued the COA to SKLO on February 19, 2025, more than two years after the BOARD hearing. (Doc. # 61 at 42:2–13).

SKLO's second legal action was filing a Complaint in Kenton County Circuit Court. In the Complaint, SKLO sought injunctive relief and damages stemming from the City's violations of SKLO's rights under the Fourteenth and First Amendments to the U.S. Constitution and Sections 1 and 14 of the Kentucky Constitution. (*See* Doc. # 1-1). As part of its filings, SKLO also filed a Motion for a Temporary Injunction, seeking an injunction from the court ordering Defendants to abide by the BOARD's decision and issue the COA. (Doc. # 1-2). Defendants removed the case to this Court on March 3, 2023. (Doc. # 1). Shortly after receiving the case, the Court Ordered Defendants to file their Response to the Motion for Temporary Injunction. (Doc. # 4). After fully briefing the Motion, the Court conducted a telephonic motion hearing on March 23, 2023. (Doc. # 10). After hearing the parties' arguments, the Court denied SKLO's Motion for Temporary Injunction (Doc. # 1-2) and stayed the matter pending the adjudication of the State Court

action. (Doc. # 10). Nearly two years later, the Court removed this case from abeyance on February 20, 2025, pursuant to an Agreed Order from the parties. (Doc. # 26).

After reopening the case, the parties conducted discovery for over a year. Once the discovery period closed, both parties filed Motions for Summary Judgment on June 1, 2026. (Docs. # 56 and 62). The parties filed their respective Responses on June 22, 2026 (Docs. # 63 and 64) and their Replies on July 13, 2026 (Docs. # 67 and 68). Both Motions having been fully briefed, they are now ripe for the Court's review.

## III. ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56 allows for the granting of summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party or parties bear the burden of showing an absence of a genuine issue of material fact. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). A genuine dispute as to a material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. at 586. At this stage, the Court must not weigh evidence or make credibility determinations but instead must ascertain "whether there is a genuine issue for trial." *Moran v. Al Basit LLC*,

788 F.3d 201, 204 (6th Cir. 2015) (quoting *Anderson*, 477 U.S. at 249). In making this determination, the Court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Further, the Court applies the same standard of review to cross-motions for summary judgment as it does when only one party files. *McKim v. NewMarket Techs., Inc.*, 370 F. App'x 600, 603 (6th Cir. 2010). The Court evaluates each motion on its own merits, drawing all reasonable inferences against the party whose motion is under consideration. *Beal ex rel. Putman v. Walgreen Co.*, 408 F. App'x 898, 902 (6th Cir. 2010). The Court will address each party's Motion for Summary Judgment individually and in turn, beginning with SKLO's Motion.

**B. SKLO's Motion for Summary Judgment**

SKLO moves for summary judgment solely on its federal due process claims under the Fourteenth Amendment (Count II), which it brings pursuant to 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 is the vehicle by which individuals may bring suits against government officials for violations of their rights under the Constitution and federal law. Specifically, § 1983 authorizes an individual to bring suit "against anyone who, under color state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelly*, 675 F.3d 580, 583 (6th Cir. 2012). To state a claim under § 1983, a plaintiff must allege that (1) some person deprived her of a federal right; and (2) that the person depriving her of that right acted

under color of state or territorial law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Municipalities may be held liable under § 1983 if the municipality itself caused the constitutional deprivation. *Lausin ex rel. Lausin v. Bishko*, 727 F. Supp. 2d 610, 626 (N.D. Ohio 2010) (citing *Monell v. New York City Dept. of Soc. Servs*, 436 U.S. 658, 690 (1978)). To prove a municipality's liability under § 1983, a plaintiff "must show that 'through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quotation omitted)).

The Fourteenth Amendment's Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. The Fourteenth Amendment protects two distinct kinds of due process—substantive and procedural. *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 604 (6th Cir. 2016). SKLO seeks judgment on its substantive and procedural due process claims. The Court will address each claim in turn.

***1. Substantive Due Process***

The doctrine of substantive due process accords that "governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of procedures employed." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992). Specifically, substantive due process protects from government interference "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Guertin v. State*, 912 F.3d 907, 918 (6th Cir. 2019) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–

21(1997)). Indeed, "[t]he interests protected by substantive due process are of course much narrower than those protected by procedural due process." *Bell v. Ohio State Univ.*, 351 F.3d 240, 250–51 (6th Cir. 2003). As such, substantive due process protects "interests protected by specific constitutional guarantees; interests so rooted in the traditions and conscience of our people as to be deemed 'fundamental rights;' and the right to freedom from government actions so arbitrary and abusive as to 'shock the conscience.'" *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 566 F. App'x 462, 472 (6th Cir. 2014) (quoting *Bell*, 351 F.3d at 249–50). Here, Defendants do not contest that SKLO maintains a property interest in the Property and use of the Property.

The Sixth Circuit has identified several contexts where substantive due process rights are challenged. Relevant to this matter, actions challenging "[t]he right not be subject to 'arbitrary and capricious' action by a state either by legislative or administrative action" fall under the umbrella of substantive due process rights. *Pearson*, 961 F.2d at 1217. Further, the Sixth Circuit has routinely observed that citizens have a substantive due process right not to be subjected to "arbitrary or irrational zoning decisions." *Id*. A plaintiff who raises a substantive due process claim in the context of zoning regulations must show "'that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action.'" *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (quoting *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008)). Specifically, in cases of state administrative zoning actions, "a plaintiff must show that the state administrative agency has been guilty of 'arbitrary and capricious action' in the *strict* sense, meaning 'that there is no rational basis . . . for the [administrative] decision."

*Pearson*, 961 F.2d at 1221 (emphasis in original). Indeed, "[t]he administrative action will withstand substantive due process attack unless it '"is not supportable on any rational basis"' or is '"willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case."'" *Id*. "In other words, the government's actions must be 'so "brutal" and "offensive" that [they do] not comport with traditional ideas of fair play and decency.'" *Golf Village North, LLC v. City of Powell, Ohio*, 42 F.4th 593, 601 (6th Cir. 2022) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (internal citations omitted)). The Sixth Circuit has described a plaintiff's burden in these kinds of cases as "a tough test." *Id*.

SKLO maintains that "Defendants' ongoing refusal to issue SKLO the COA constitutes 'arbitrary and capricious action' in the most literal sense—that 'there is no rational basis' for Defendants' actions." (Doc. # 62 at 12 (internal citations omitted)). Specifically, SKLO contends that Defendants had a duty to provide SKLO with the COA and refused to do so, instead choosing to seek an appeal to which they were not entitled. (*Id*. at 13).

For their part, Defendants maintain that their decisions to withhold the COA and seek judicial review were both rational and justified. (Doc. # 63 at 3–4). They claim that they had an interest in "preserv[ing] the status quo until the state courts resolved whether SKLO was, in fact, entitled to the permit under the City's ordinances." (*Id*. at 3). They assert they had a plausible reason for withholding the COA—"avoiding [ ] uncertainty, reliance and potential disruption" that could have arisen had they issued SKLO the COA while the City's appeal made its way through the Kentucky courts. (Doc. # 63 at 4). They further claim that their appeal was not arbitrary because the Kentucky Court of Appeals

dismissed the case on substantive, rather than procedural, grounds. (*Id*. at 3–4 ("And, to be clear, and contrary to SKLO's assertions, the Kentucky Court of Appeals affirmed dismissal for a different reason than the trial court: it held that the City's pleading failed to allege sufficient, specific facts showing how the City was injured or aggrieved, not that the City was categorically barred from appealing a BOARD decision.")).

The Court finds that SKLO has not met its burden of showing that Defendants' actions were so arbitrary and capricious that they amount to a violation of its substantive due process rights. Simply put, SKLO has not shown that Defendants' bases for acting were irrational. Starting with the issuance of the COA, SKLO has not shown that Defendants' stated reason for not issuing the COA—maintaining the status quo to prevent construction on the Property while their appeal went before the Kentucky courts—is the kind of offensive or brutal conduct that traditionally makes up a substantive due process violation. *See Golf Village*, 42 F.4th at 602 (finding a rational basis for refusing to issue a "use determination" advisory opinion because the issuer did not "want to bind himself without the benefit of complete information"). Here, the City did not want to produce a situation where SKLO did extensive work and spent a lot of money on the Property, only to have the appellate court strike down the BOARD's decision and render the work done, the money spent useless, and the Property unusable. That is a rational basis for making its decision.

Further, SKLO cannot show that Defendants' appeal was arbitrary and capricious. The Court acknowledges that the Kentucky Court of Appeals ruled against the City. However, the Court also notes that the Kentucky Court of Appeals decided the case against the City because they failed to effectively plead an injury by the BOARD's action,

not because the statute forbids a municipality from appealing a state administrative decision. (Doc. # 56-10 at 5). Put another way, the City's case was dismissed because they pled their case poorly, not because they were barred from pleading it at all. If the City had acted arbitrarily by filing a case against itself for which it did not have standing, surely the Court of Appeals would have stated that directly. And this Court will not question the Kentucky court's determination on an issue of Kentucky law. *See Jackson*, 925 F.3d at 808 (6th Cir. 2019) (finding that federal courts should avoid undetermined issues of state law because state courts are "in the better position to apply and interpret" their own jurisdiction's law). Accordingly, the Court finds that SKLO failed to show Defendants acted arbitrarily or capriciously, and as such, SKLO's Motion is **denied** on its substantive due process claims.

***2. Procedural Due Process***

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)). To prove a procedural due process claim, SKLO must show it (1) had a life, liberty or property interest protected by the Due Process Clause; (2) was deprived of this protected interest; and (3) the state did not afford it adequate procedural rights prior to depriving him of his protected interest. *R.M. Through K.M. v. Boone Cnty. Pub. Schs.,* No. CV 23-9-DLB-CJS, 2025 WL 3516464, at *4 (E.D. Ky. Dec. 8, 2025) (quoting *EJS Props.*, 698 F.3d at 855). "'Procedural due process' at its core requires notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Garcia v. Fed. Nat. Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015)

(citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). As mentioned *supra*, there is no dispute that SKLO possessed a constitutionally protected property interest in the Property. The parties' arguments here hinge on the second and third factors, which the Court will analyze in turn.

**a. Deprivation**

SKLO maintains that Defendants deprived it of its "right to access" its property when they refused to provide it with the COA that SKLO "rightfully owned." (Doc. # 62 at 14). Defendants respond that SKLO cannot establish a deprivation of its rights to its property because it cannot show that the City "block[ed] SKLO from entering the Property, exclude[d] SKLO from the Property, seize[d] the Property, or prevent[ed] all economically viable use of the Property." (Doc. # 63 at 7). Instead, in Defendants' view, SKLO's injury was "not a deprivation of access to property, but a delay in receiving a contested permit while the parties litigated whether SKLO was entitled to it." (*Id.*).

The Court finds that SKLO has failed to show a deprivation of its protected interest. To start, Defendants never intended to permanently deprive SKLO of the COA. Rather, Defendants withheld the COA while their appeal was pending before the Kentucky courts. Once the State Court action was finalized—when the Kentucky Supreme Court declined review Defendants' case—Defendants issued SKLO the COA. To be clear, SKLO was not denied access to the zoning process. It was not stripped of its title to the Property. Rather, it suffered a delay in receiving its permit while Defendants sought review of the BOARD's decision. But delay is not a permanent, final revocation. *Chandler v. Village of Chagrin Falls*, 296 F. App'x 463, 469 (6th Cir. 2008) ("This Court has held that the holder of a building or zoning permit has a constitutionally protected interest and is

therefore entitled to proper proceedings prior to a final determination regarding revocation."). The Court is skeptical that this alleged treatment constitutes a true deprivation as contemplated by the Due Process Clause.

**b. Inadequate Post-Deprivation Process**

As mentioned *supra*, procedural due process traditionally requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Garcia*, 782 F.3d at 741. "To satisfy due process under the Constitution, notice must be 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections,' and 'must afford a reasonable time for those interested to make their appearance[.]'" *DePiero v. City of Macedonia*, 180 F.3d 770, 788 (6th Cir. 1999) (quoting *Mullane*, 339 U.S. at 314). What makes up meaningful notice will differ from case to case, as the requirements of due process are "fluid and fact dependent." *Shoemaker v. City of Howell*, 795 F.3d 553, 559 (6th Cir. 2015). And the crux of the procedural due process analysis is whether a plaintiff received an opportunity to be heard at a meaningful time and in a meaningful manner. *Armstrong*, 380 U.S. at 552.

SKLO contends it was not afforded any sort of process after Defendants withheld the zoning COA, as Defendants "held the zoning permit hostage without giving SKLO the opportunity for a hearing or even notice of an opportunity related to the deprivation of the zoning permit." (Doc. # 62 at 14–15). SKLO claims that the City did not have authorization to withhold the COA, such that their action is prohibited by law. (*Id*. at 15). Defendants respond that SKLO had notice and an opportunity to be heard after it withheld the COA via the State Court action. (Doc. # 63 at 8). They claim that SKLO "was not

shut out of the process – it was right smack in the middle of it." (*Id.*). Further, Defendants aver that SKLO had meaningful opportunities throughout the permit process, all the way to the Court of Appeals' decision. (*Id.*).

Again, the Court is skeptical of SKLO's argument. When a defendant commits a "random and unauthorized act" that deprives a plaintiff of a property interest—as SKLO claims Defendants have—the government can still prevail if it provides an "adequate" post-deprivation procedure. *Warren v. City of Athens, Ohio*, 411 F.3d 697, 709 (6th Cir. 2005) (citing *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991)). So, even in the event that Defendants' actions were "unauthorized," they could still prevail if they provided SKLO with adequate notice and opportunity to be heard.

Start with the denial of the COA. When Belcher originally denied SKLO the COA, SKLO was given notice that its application was denied and why its application was denied. (*See* Doc. # 56-5 at 5–8; Doc. # 61 at 28:7–29:15). Upon receiving notice that its application had been denied, SKLO appealed to the BOARD, which held a hearing where SKLO had the opportunity to present its case before the board members. (Doc. # 56-5; Doc. # 56-6 at 4–5). Both the notice and opportunity provided to SKLO at that point in the proceedings accorded with the expectations of the Constitution.

Next, the withholding of the COA. When SKLO prevailed before the BOARD, the City appealed the case pursuant to KRS § 100.347(1) to the Kenton County Circuit Court and withheld the COA to maintain the status quo. (Doc. # 56-7). SKLO was named a party to this appeal, meaning it had the opportunity to contest Defendants' legal actions in front of the Kenton Circuit Court. (*Id.*). While SKLO may disagree with the City's appeal and the subsequent delays that resulted from it, it is a far cry to say that the appeal did

not provide SKLO with notice that the City planned to continue pursuing its interpretation of the zoning code. Further, the City, through David Davidson, gave SKLO notice that it would withhold the permit until the State Court action had been decided. (Doc. # 59-1 at 32). And Kentucky law also provides a stay of enforcement of a judgment against the appealing party while the appeal is pending. *See* Ky. R. App. P. 63(A)(2); *see also* Ky. R. App. P. 1(A) ("These rules govern appellate procedure in *all* Kentucky courts . . . .") (emphasis added). Through the State Court action, SKLO had the opportunity to present its case, argue against Defendants' case, and protest Defendants' withholding of the COA in front of several neutral decisionmakers. That is precisely what the Due Process Clause envisions—meaningful opportunity to challenge a deprivation by the Government. *Armstrong*, 380 U.S. at 552. Accordingly, the Court finds that SKLO is not entitled to summary judgment on its procedural due process claims and its Motion is **denied** as to Count I.

### C. Defendants' Motion for Summary Judgment

Defendants move for summary judgment on all of SKLO's claims. Specifically, Defendants seek judgment as a matter of law on SKLO's injunctive relief claim (Count I), federal due process claim (Count II), First Amendment claim (Count III), and Kentucky Constitution claims (Counts IV and V). The Court will begin with Count I.

#### ***1. Injunctive Relief***

Defendants first seek to dismiss Count I of SKLO's Complaint, in which SKLO sought an injunction from the Court to compel Defendants to issue SKLO the COA. (Doc. # 56 at 8). However, as Defendants note and SKLO concedes, there is no live controversy involving the issuance of the COA. (*Id.*; Doc. # 64 at 16). Defendants granted

SKLO the COA on February 19, 2025, at which point the purpose of SKLO's injunctive relief ceased. (Doc. # 61 at 42:2–13). Further, the Court already ruled on SKLO's Motion for Temporary Injunction. (*See* Doc. # 10). Accordingly, the Court will **dismiss** Count I of SKLO's Complaint as moot and will **deny as moot** Defendants' Motion as it pertains to Count I.

***2. Federal Due Process Violations***

Defendants seek to dismiss Count II of SKLO's Complaint, where SKLO brings a claim under 42 U.S.C. § 1983 claiming violations of its right to both substantive and procedural due process under the Fourteenth Amendment. (Doc. # 56 at 6). For purposes of consistency, the Court will address Defendants' Motion for Summary Judgment in the same order it addressed SKLO's Motion. Accordingly, the Court will begin with Defendants' arguments on substantive due process.

**a. Substantive Due Process**

Defendants maintain they had a rational basis for each decision they made. First, they contend they made the initial decision to deny SKLO a permit on the basis of their understanding of the City's zoning ordinance, which they believed forbade kennels in the TUMU. (Doc. # 56 at 14–15). Further, they maintain they had a rational basis to withhold the COA after the BOARD's decision. (*Id.* at 15). Specifically, they claim that they wanted to maintain the status quo while their appeal made its way through the Kentucky state court system. (*Id.*). They further aver that their appeal of the BOARD's decision was itself rational, even in light of the Kentucky Court of Appeals' decision to uphold the dismissal of their case. (*Id.* at 15–16).

SKLO responds that the City's decisions to withhold the COA and appeal the case to the Kentucky courts system were arbitrary and capricious and lacked a rational basis. (Doc. # 64 at 13). First, SKLO argues that the BOARD's decision was the City's final determination on the COA, such that the City's position is unreasonable and irrational. (*Id.*). Next, SKLO argues that the City had no basis to withhold the COA, such that withholding it was illegal. (*Id.*). SKLO also points to "how the City's arbitrary, capricious, and shock-the-conscience actions were carried out[,]" which it contends were not rational. (*Id.*).

The Court finds that Defendants had a legitimate reason for denying the COA originally. First, the City had a duty to enforce its ordinances as it saw fit, such that it exercised its authority by not issuing SKLO a COA for what it believed to be an unauthorized use. Even if the BOARD overturned the City's initial decision, that does not mean the City's reasons for making the decision were illegitimate. Indeed, Belcher testified that he denied SKLO's permit application because he interpreted the code as saying that the TUMU district did not allow kennels. (Doc. # 58 at 42:14–16, 45:3–18). And further, Belcher's decision was not arbitrary, as evidenced by the BOARD's close 4–3 vote on SKLO's administrative appeal. (Doc. # 56-6 at 5). That the vote was so close only reinforces the rationality of the City's decision.

Further, the Court finds that Defendants had a rational basis for withholding SKLO's COA as the State Court action proceeded on appeal. It makes sense that the City would not want SKLO to develop or perform long-term construction on the Property while its case was indefinitely pending before the Kentucky courts. Were that to be allowed, SKLO could have spent exorbitant amounts of money developing a project that

may not have gone forward, while the City would then be stuck with a property that is not suitable for its developed use. The City had an interest in avoiding waste of resources and maintaining the status quo until it received a final ruling on its court case.

Finally, the Court finds that Defendants' appeal to Kenton County Circuit Court and the Kentucky Court of Appeals was not arbitrary and capricious. The Court once again acknowledges that the Court of Appeals ruled against the City. However, the Court also notes that the Court of Appeals decided the case against Defendants because they failed to effectively plead an injury by the BOARD's action, not because the statute forbids a municipality from appealing a municipal administrative decision. (Doc. # 56-10 at 5). If the City's actions were arbitrary, the Court of Appeals would have indicated as much instead of narrowly deciding the case on substantive grounds.

Accordingly, the Court finds that Defendants' actions in this matter satisfy rational basis review, such that summary judgment is appropriate. As such, Defendants' Motion is **granted** as to SKLO's substantive due process claims.

**b. Procedural Due Process Claim**

***i. Exhaustion***

Defendants first contend that SKLO's procedural due process claim cannot continue because SKLO failed to plead the inadequacy of the state remedial procedures prior to making its federal due process claim. (Doc. # 56 at 8). They contend that SKLO was required to plead that the City's or Kentucky's remedial measures were unavailable or futile, which SKLO did not do. (*Id*. at 9). They claim that, given the availability of the State Court action, mandamus review and independent judicial review, SKLO cannot claim it lacked due process because SKLO had several review options it could have

utilized. (*Id*. at 10). SKLO responds that "[t]here was no administrative or other types of legal action SKLO could have taken to obtain any sort of notice or opportunity to be heard on the City's active violations of the law." (Doc. # 64 at 6). SKLO also claims that it was under no obligation to exhaust its administrative remedies before filing a 1983 lawsuit. (*Id*.). Finally, SKLO rejects Defendants' contention that it should have sought a writ of mandamus as its remedy because of the "exceptional" and "disfavored" nature of the remedy. (*Id*. at 7).

The Court will decline to grant Defendants' motion on this ground. In Kentucky, "'[r]elief by way of prohibition or mandamus is an extraordinary remedy and [courts] have always been cautious and conservative both in entertaining petitions for and in granting such relief.'" *Phillips v. Delahanty*, 544 S.W.3d 652, 655 (Ky. 2018) (quoting *Bender v. Eaton*, 343 S.W.2d 799, 800 (Ky. 1961)). So, to start, it's unlikely a Kentucky court would have heard SKLO's mandamus petition in the first place. However, courts grant mandamus petitions upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise, and great injustice and irreparable injury will result if the petition is not granted. *Mahoney v. McDonald-Burkman*, 320 S.W.3d 75, 77 (Ky. 2010).

Here, SKLO's case does not fit into either one of the typical buckets of cases that can garner mandamus relief. And in the absence of any other suggestions from Defendants as to what SKLO could have done, the Court will not imagine a number of

remedies or alternative relief options SKLO should have pursued. Accordingly, the Court will address the merits of Defendants' procedural due process arguments.

### *ii. Deprivation*

The Court determined *supra* that SKLO did not adequately show a deprivation of its property interest to satisfy the summary judgment standard. *Supra* § III(B)(2)(a). The Court further concludes that Defendants are entitled to summary judgment on the issue of deprivation. Put simply, Defendants never permanently deprived SKLO of its constitutionally protected property interest, in either the Property or the COA. In withholding the COA, Defendants merely delayed issuing SKLO's permit while awaiting a decision on their appeal. In essence, Defendants delayed issuing the COA and once they received the decision in the State Court action, they timely issued the COA. This is hardly the type of deprivation contemplated by the strictures of procedural due process, such that the Court could grant summary judgment on the issue of deprivation alone.

### *iii. Notice and Opportunity*

However, even if Defendants' actions did deprive SKLO of its constitutional interest, the Court finds that Defendants provided SKLO with meaningful notice and opportunity to be heard after the deprivation. Defendants contend that they provided SKLO with due process that satisfies the constitutional requirements, such that they are entitled to summary judgment. (Doc. # 56 at 12–13). The Court agrees. As mentioned *supra*, Defendants provided SKLO with notice of their initial decision against it, which led to SKLO's appeal to the BOARD. *Supra* § III(B)(2)(b). After the BOARD ruled in favor of SKLO, Defendants gave SKLO notice of their intent to appeal pursuant to KRS § 100.347. (Doc. # 59-1 at 32). Defendants named SKLO as a party to the appeal, which gave them

an opportunity to contest Defendants' appeal and withholding of the permit. (Doc. # 56-7). SKLO had further opportunity to be heard in front of the Kentucky Court of Appeals, where it opposed Defendants' actions in front of a neutral arbiter. (Doc. # 56-8). At every point in the proceedings, SKLO had an opportunity to be heard at a meaningful time and in a meaningful manner, which is all due process requires. *Garcia*, 782 F.3d at 741. Accordingly, Defendants' Motion is **granted** as to SKLO's procedural due process claims in Count I.[2]

### *3. First Amendment Claims*

Defendants next move for summary judgment on SKLO's First Amendment claims. (Doc. # 56 at 16). In its Response, SKLO concedes its First Amendment claims. (Doc. # 64 at 16 ("Moreover, discovery produced in this case, after review, does not support a continued claim under the First Amendment . . . ."). Accordingly, Defendants' Motion is **granted** as to Count III.

### *4. Kentucky Constitutional Claims*

Finally, Defendants move for summary judgment on Counts IV and V of SKLO's Complaint, where SKLO asserts claims under the Kentucky Constitution. (Doc. # 56 at 19). Defendants maintain that SKLO's claims must fail because Kentucky law does not recognize a cause of action allowing a plaintiff to recover monetary damages for alleged violations of their rights under the Kentucky Constitution. (*Id*. (citing *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529 (Ky. 2011))). SKLO responds by stating that it is not seeking compensatory damages for its claims under the Kentucky Constitution, effectively waiving

---

[2] Given the denial of SKLO's Motion and the granting of Defendants' Motion as to Count II, the Court need not determine whether David Davidson and Dalton Belcher are entitled to qualified immunity on SKLO's due process claims.

its claims. (Doc. # 64 at 16). Accordingly, Defendants' Motion is **granted** as to Counts IV and V.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1) Defendants' Motion for Summary Judgment (Doc. # 56) is **GRANTED IN PART** and **DENIED IN PART**, being **granted** with respect to Counts II, III, IV and V, and **denied as moot** with respect to Count I;

(2) Plaintiff SKLO's Motion for Summary Judgment (Doc. # 62) is **DENIED**;

(3) This matter is **DISMISSED AND STRICKEN** from the Court's active docket; and

(4) An accompanying **JUDGMENT** in favor of Defendants shall be filed contemporaneously herewith.

This 3rd day of September, 2026.

**Signed By:**
***David L. Bunning*** DB
**Chief United States District Judge**

G:Judge-DLB\DATA\ORDERS\Cov2023\23-32 MOO re Cross MSJs.docx